**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| | § | |
| In re | § | **Chapter 11** |
| | § | |
| AUTOMEDX, LLC[1] | § | **Case No. 18-42355-BTR** |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |

### DEBTOR AUTOMEDX, LLC'S CHAPTER 11 PLAN OF REORGANIZATION

Chapter 11 Debtor[2] and Debtor in Possession AutoMedx, LLC, a Texas limited liability company, hereby proposes this *Chapter 11 Plan of Reorganization* (including all exhibits and schedules thereto, as amended or modified from time to time in accordance with its terms, the "**Plan**") in accordance with the provisions of Chapter 11 of the United States Bankruptcy Code in order to provide for the resolution and treatment of the Allowed Claims against the Debtor and its Estate. The Debtor is a proponent of the Plan for purposes of § 1129 of the Bankruptcy Code.

Reference is made to the *Disclosure Statement Under 11 U.S.C.§ 1125 in Support of Debtor' Proposed Chapter 11 Plan of Reorganization* (the "**Disclosure Statement**") for a discussion of, among other things, the Debtor's history, relevant properties, the Claims, a summary and analysis of this Plan, and related matters pertaining to the Debtor and its Estate. All holders of Claims are encouraged to read both this Plan and the Disclosure Statement before voting to accept or reject this Plan.

---

[1] The last four digits of the Debtor's EIN number are 5690. The Debtor's mailing address is 7700 Windrose Ave. #G300, Plano, TX 75204

[2] Capitalized terms not otherwise defined have the meaning ascribed them in section 1.2 of the Plan.

## TABLE OF CONTENTS

I.      **DEFINITIONS AND RULES OF INTERPRETATION** ........................................6

    1.1   **Scope of Defined Terms**................................................................6

    1.2   **Defined Terms** .................................................................................6

    1.3   **Rules of Interpretation** ...............................................................13

    1.4   **Governing Law**..............................................................................14

    1.5   **Computation of Time** .................................................................14

    1.6   **Reference to the Debtor or the Reorganized Debtor** ..............14

II.    **GENERAL ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, PROFESSIONAL CLAIMS, AND U.S. TRUSTEE STATUTORY FEES**..................14

    2.1   **Administrative Claims Bar Date**...............................................14

    2.2   **General Administrative Claims** ................................................15

    2.3   **Professional Claims**....................................................................15
         2.3.1  Post-Confirmation-Date Fees and Expenses ...........................15
         2.3.2  Final Fee Applications .............................................................16
         2.3.3  Payment of Professional Fees ................................................16

    2.4   **Priority Tax Claims** ....................................................................16

    2.5   **Statutory Fees Payable Under 28 U.S.C. § 1930** ........................16

III.   **CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND EQUITY INTERESTS** ...........................................................................................16

    3.1   **Classification of Claims and Equity Interests**.........................16

    3.2   **Summaries of Classification and Treatment**............................17

    3.3   **Treatment of Claims and Equity Interests** .............................17
         3.3.1  Class 1—Other Priority Claims ..............................................17
         3.3.2  Class 2—ZOLL/ACSI Unsecured Judgment Claim ...............17
         3.3.3  Class 3—General Unsecured Claims .....................................18
         3.3.4  Class4—Equity Interests ........................................................19

    3.4   **Elimination of Vacant Classes** .................................................19

    3.5   **Voting Rights and Acceptance Requirements** .........................19

    3.6   **Confirmation Under §§ 1129(a) and 1129(b) of the Bankruptcy Code**............20

    3.7   **Special Provision Governing Unimpaired Claims** ..................20

    3.8   **Subordinated Claims**.................................................................20

IV.   **IMPLEMENTATION OF THE PLAN** ...............................................20

    4.1   **Reorganized Debtor** ...................................................................20

    4.2   **Vesting of Assets in the Reorganized Debtor**...........................20

    4.3   **Cancellation of Notes, Instruments, and Other Documents**.........21

    4.4   **Section 1146 Exemption from Certain Transfer Taxes and Recording Fees**.....................21

4.5    Preservation of Causes of Action ................................................ 22

4.6    Effectuating Documents and Further Transactions ......................... 22

4.7    Debtor Management and Employment-Related Agreements .................. 23

V.      TREATMENT OF EXECUTORY CONTRACTS ..................................... 23

5.1    Assumption of Executory Contracts ............................................ 23

5.2    Claims Against the Debtor Upon Rejection .................................. 23

5.3    Cure and Assumption of Executory Contracts ............................... 23

5.4    Effect of Assumption ............................................................ 24

5.5    Assumption or Rejection of Disputed Contracts ............................ 24

5.6    Modification, Amendments, Supplements, Restatements or Other Agreements ......... 24

5.7    Reservation of Rights ........................................................... 25

5.8    Contracts and Leases Entered into After the Petition Date .............. 25

VI.     PROVISIONS GOVERNING DISTRIBUTIONS ................................... 25

6.1    Initial Distributions ............................................................. 25

6.2    Subsequent Distributions ...................................................... 25

        6.2.1   Subsequent Distribution Dates ...................................... 25
        6.2.2   Supplemental Distribution Date ..................................... 25
        6.2.3   Distributions on Disputed Claims .................................. 26

6.3    Record Date and Delivery of Distributions ................................. 26

        6.3.1   Record Date for Claim Holders ...................................... 26
        6.3.2   Delivery of Distributions in General ............................... 26

6.4    De Minimis Distributions ...................................................... 27

6.5    Undeliverable Distributions ................................................... 27

6.6    Reversion ........................................................................ 27

6.7    Compliance with Tax Requirements and Allocations to Principal and Interest ........... 27

6.8    Setoffs ........................................................................... 28

6.9    No Postpetition Interest on Claims .......................................... 28

6.10   No Payment Over the Full Amount ........................................... 28

6.11   Claims Paid or Payable by Third Parties .................................... 29

        6.11.1  Claims Paid by Third Parties ........................................ 29

VII.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
        DISPUTED CLAIMS ................................................................ 29

7.1    Objections to Claims ........................................................... 29

7.2    Estimation of Claims ........................................................... 29

7.3    Expungement and Disallowance of Claims .................................. 30

        7.3.1   Paid, Satisfied, Amended, Duplicate, or Superseded Claims ..... 30
        7.3.2   Claims by Persons From Which Property Is Recoverable ......... 30
        7.3.3   Untimely Claims ...................................................... 30

7.4   Amendments to Proofs of Claim ............................................................ 30

7.5   No Distributions Pending Allowance .................................................... 30

7.6   Distributions After Allowance ............................................................. 31

7.7   Administration Responsibilities ........................................................... 31

VIII.   CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN .................31

8.1   Conditions Precedent to the Effective Date ......................................... 31
    8.1.1   Confirmation Order ....................................................................31
    8.1.2   No Stay of Confirmation ............................................................31
    8.1.3   Necessary Documents .................................................................31
    8.1.4   Necessary Authorizations ...........................................................31

8.2   Waiver of Conditions ......................................................................... 31

8.3   Simultaneous Transactions ................................................................. 32

8.4   Effect of Non-Occurrence of the Effective Date .................................... 32

IX.   SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS..........32

9.1   Compromise and Settlement .............................................................. 32

9.2   Discharge of the Debtor ..................................................................... 32

9.3   Release of Liens ................................................................................ 33

9.4   Release by the Debtors ...................................................................... 33

9.5   Voluntary Release by Holders of Claims .............................................. 34

9.6   Exculpation ...................................................................................... 35

9.7   Injunction ........................................................................................ 35

9.8   Limitations on Exculpations and Releases ........................................... 36

9.9   Temporary Injunction ....................................................................... 36

9.10  Preservation of Insurance .................................................................. 37

X.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN............37

10.1  Modification of Plan .......................................................................... 37

10.2  Effect of Confirmation on Modification ............................................... 37

10.3  Revocation of Plan ............................................................................ 37

XI.   RETENTION OF JURISDICTION ................................................................38

XII.   MISCELLANEOUS PROVISIONS ...............................................................40

12.1  Immediate Binding Effect .................................................................. 40

12.2  Additional Documents ....................................................................... 40

12.3  Reservation of Rights ......................................................................... 41

12.4  Successors and Assigns ...................................................................... 41

12.5  Term of Injunction or Stays ............................................................... 41

12.6  Entire Agreement .............................................................................. 41

12.7   **Exhibits** ................................................................................................................. 41

12.8   **Severability** ........................................................................................................... 41

12.9   **Closing of Chapter 11 Cases** .............................................................................. 42

12.10  **Conflicts** ................................................................................................................ 42

12.11  **Further Assurances** ............................................................................................... 42

12.12  **No Stay of Confirmation Order** ......................................................................... 42

12.13  **Waiver or Estoppel** ............................................................................................... 42

12.14  **Post-Confirmation Date Service** ........................................................................ 42

12.15  **Notices** .................................................................................................................. 42

# I.    Definitions and Rules of Interpretation

**1.1     Scope of Defined Terms**

Except as expressly provided herein or unless the context otherwise requires, each capitalized term used in this Plan will either have (a) the meaning set forth in Article 1.2 or (b) if such term is not defined in Article 1.2, but such term is defined in the Bankruptcy Code, the meaning ascribed to such term in the Bankruptcy Code.

**1.2     Defined Terms**

**1.2.1**    "ACSI" means Advanced Circulatory Systems, Inc.

**1.2.2**    "Administrative Claim" means a Claim arising under §§ 503(b), 507(b) or, to the extent applicable, 1114(e)(2) of the Bankruptcy Code, including any: (a) Claim for the actual and necessary costs and expenses incurred after the Petition Date and through the Confirmation Date of preserving the Estate and operating the business of the Debtor, including any General Administrative Claim or Ordinary Course General Administrative Claim; (b) Professional Claim; or (c) Claim for fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code and 28 U.S.C. § 1911 and § 1930.

**1.2.3**    "Administrative Claims Bar Date" means the 30th day after the Confirmation Date or such other date as may be fixed by an order of the Bankruptcy Court.

**1.2.4**    "Allowed" means, with respect to any Claim, that (a) such Claim has been allowed by the terms of this Plan, (b) such Claim has been allowed by an order of the Bankruptcy Court, (c) such Claim is listed in the Schedules as not disputed, not contingent, and not unliquidated and no Proof of Claim has been filed, or (d) such Claim is evidenced by a valid and timely filed Proof of Claim or request for payment of an Administrative Claim, as applicable, to which no objection to allowance, request for estimation, or other challenge has been filed before the applicable Claims Objection Bar Date.

**1.2.5**    "Arbitration Award" means those certain arbitration awards issued in favor of ACSI on April 18, 2018 and July 19, 2018 and reduced to judgment on January 28 and 29, 2019 by the United States District Court for the District of Minnesota in case number 18-cv-2060 [Docket Nos. 26-27].

**1.2.6**    "Avoidance Actions" means all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor under any applicable section of the Bankruptcy Code, including §§ 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law. Without limiting the foregoing definition, Avoidance Actions include but are not limited to actual or potential claims and causes of action to avoid or claw back a payment or a transfer of property, a setoff, or an obligation incurred by the Debtor, as reflected in the Schedules or the Disclosure Statement.

**1.2.7**    "Ballots" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote must, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the

procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

**1.2.8** "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**1.2.9** "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**1.2.10** "Bankruptcy-Related Action" means any act taken or omitted to be taken in connection with, or arising from or relating in any way to, the Chapter 11 Case, including: (a) the management and operation of the Debtor's or Reorganized Debtor's business and the discharge of duties under the Bankruptcy Code during the pendency of this Chapter 11 Case; (b) implementation of any of the transactions provided for, or contemplated in, this Plan or any Plan Supplement; (c) any action taken in the negotiation, formulation, development, proposal, solicitation, disclosure, Confirmation, or implementation of the Plan or any Plan Supplement; (d) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Disclosure Statement or the Plan, any Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and consummation of the Plan); (e) the administration of this Plan or the assets and property to be distributed under this Plan; (f) any other Prepetition or Postpetition act taken or omitted to be taken in connection with or in contemplation of the bankruptcy restructuring of the Debtor; or (g) the preparation and filing of the Chapter 11 Case.

**1.2.11** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Case, and the general, local, and chambers rules of the Bankruptcy Court.

**1.2.12** "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (within the meaning of Bankruptcy Rule 9006(a)).

**1.2.13** "Cash" means the legal tender of the United States of America or the equivalent thereof.

**1.2.14** "Cause of Action" means any action, claim, right, litigation, proceeding, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, recoupment, counterclaim, cross-claim, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, whether scheduled in the Schedules or not scheduled in the Schedules, whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law or in equity or under any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim, or recoupment; or any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or interests; (c) any claim under § 362 of the

Debtor AutoMedx, LLC's Chapter 11 Plan of Reorganization                                          7

Bankruptcy Code; (d) any Avoidance Action; (e) any claim or defense, including fraud, mistake, duress, or usury, or any other defenses set forth in § 558 of the Bankruptcy Code; or (f) any claim based on non-bankruptcy law, including any state-law fraudulent transfer or creditors' rights claim.

**1.2.15**   "Chapter 11 Case" means Case Number 18-42355, the Chapter 11 case pending for the Debtor under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**1.2.16**   "Claim" means any claim against the Debtor or the Debtor's Property as defined in § 101(5) of the Bankruptcy Code.

**1.2.17**   "Claims Bar Date" means: (a) with respect to claims other than those of Governmental Units, February 19, 2019; (b) with respect to claims filed by Governmental Units, April 17, 2019; or (c) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed, including the Administrative Claims Bar Date.

**1.2.18**   "Claims Objection Bar Date" means: (a) the date that is the later of (i) 60 days after the Confirmation Date, (ii) as to Proofs of Claim filed after the applicable Claims Bar Date, the 30th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed, or (iii) as to Proofs of Claim filed in connection with an Executory Contract rejected post-Confirmation, 30 days after such Proof of Claim is timely filed in accordance with Article 5; or (b) such later date as may be established by order of the Bankruptcy Court upon a motion by the Reorganized Debtor with notice only to those parties entitled to receive notice in accordance with Article 12.14.

**1.2.19**   "Claims Register" means the official register of Claims maintained by the Clerk of Court.

**1.2.20**   "Class" means a class of Claims or Equity Interests as set forth in Article 3 in accordance with § 1122(a) of the Bankruptcy Code.

**1.2.21**   "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

**1.2.22**   "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.2.23**   "Confirmation Hearing" means any hearing held by the Bankruptcy Court to consider Confirmation of the Plan in accordance with § 1129 of the Bankruptcy Code.

**1.2.24**   "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with § 1129 of the Bankruptcy Code.

**1.2.25**   "Debtor" means AutoMedx, LLC, a Texas limited liability company.

**1.2.26**   "Disclosure Statement" means the Disclosure Statement Under 11 U.S.C. § 1125 in Support of Debtor's Proposed Chapter 11 Plan of Reorganization [Docket No. TBD], as approved by the Bankruptcy Court's *Order Approving Disclosure Statement* [Docket No. TBD], including all exhibits and schedules thereto and references therein that relate to the Plan.

**1.2.27** "Disputed Claim" means any Claim that has not been Allowed.

**1.2.28** "Distribution" means a distribution of property under the Plan, to take place as provided for herein.

**1.2.29** "Distribution Date" means any of the following: (a) the Initial Distribution Date; (b) the Subsequent Distribution Date; (c) any Supplemental Distribution Date, and (d) the Final Distribution Date.

**1.2.30** "Distribution Grace Period" means, with respect to any Subsequent Distribution Date or the Final Distribution Date, 60 days after the date on which such payment was required to be made in accordance with the Class treatment described in Plan Article 3 and the provisions governing Distributions contained in Plan Article 6.

**1.2.31** "Effective Date" means 12:01 a.m. prevailing Central Time on the Business Day on which all conditions to the occurrence of the Effective Date set forth in Article 8.1 hereof are satisfied or waived.

**1.2.32** "Equity Interest" means any equity security (as defined in § 101(16) of the Bankruptcy Code), including any membership interest constituting an ownership interest in the Debtor.

**1.2.33** "Estate" means the estate created for the Debtor in its Chapter 11 Case in accordance with § 541 of the Bankruptcy Code.

**1.2.34** "Exculpated Parties" means each of the following in its capacity as such: (a) the Debtor and Reorganized Debtor, (b) the managers, officers, members, and employees of the Debtor and Reorganized Debtor, and (c) the Professionals of the Debtor.

**1.2.35** "Executory Contract" means a contract that a Debtor may assume or reject under § 365 or 1123 of the Bankruptcy Code or any agreement treated as such for the purposes of the Plan, as well as any Unexpired Lease

**1.2.36** "Federal Judgment Rate" means the interest rate set forth in 28 U.S.C. § 1961 that was in effect on the Confirmation Date.

**1.2.37** "Final Distribution Date" means the Subsequent Distribution Date or Supplemental Distribution Date, whichever the case may be, on which the Reorganized Debtor makes the final payments under the Plan in accordance with the Class treatment described in Article 3.

**1.2.38** "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek certiorari or move for a new trial, re-argument or rehearing has expired and no appeal, petition for certiorari or motion for a new trial, re-argument or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, review, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the

Federal Rules of Civil Procedure, as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, may be filed relating to such order will not cause such order to not be a Final Order.

**1.2.39**  "General Administrative Claim" means an Administrative Claim other than a Professional Claim.

**1.2.40**  "Governmental Unit" means a governmental unit as defined in § 101(27) of the Bankruptcy Code.

**1.2.41**  "Holder" means an Entity holding a Claim against the Debtor.

**1.2.42**  "Impaired" means, with respect to any Claim or Equity Interest, a Claim or Equity Interest that is in a Class that is "impaired" within the meaning of § 1124 of the Bankruptcy Code.

**1.2.43** "Initial Distribution Date" means the Business Day that is as soon as practicable after the Effective Date when Distributions under the Plan will commence.

**1.2.44**  "Insider" means an insider as defined in § 101(31) of the Bankruptcy Code.

**1.2.45**  "Internal Revenue Code" means the United States Internal Revenue Code of 1986, as amended from time to time, and the U.S. Department of Treasury regulations promulgated thereunder.

**1.2.46**

**1.2.47**  "Lien" means a lien as defined in § 101(37) of the Bankruptcy Code.

**1.2.48** "Ordinary Course General Administrative Claim" means a General Administrative Claim that is a monetary obligation for goods or services incurred by the Debtor in the ordinary course of the Debtor's business from the Petition Date to and including the Confirmation Date.

**1.2.49**  "Person" has the meaning set forth in § 101(41) of the Bankruptcy Code.

**1.2.50**  "Petition Date" means October 19, 2018.

**1.2.51**  "Plan" has the meaning set forth in the Introduction hereto, with any amendments, supplements (including any Plan Supplement), changes, and modifications made thereto by the Debtor.

**1.2.52**  "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, including, among other documents, the following: (a) a list of Specified Contracts (if any) and proposed cure amounts; (b) a schedule of the of Retained Causes of Action; as applicable, to be filed with the Bankruptcy Court by the Debtor no later than ten calendar days before the Voting Deadline.

**1.2.53**  "Postpetition" means on or after October 19, 2018.

**1.2.54**  "Prepetition" means before October 19, 2018.

**1.2.55**  "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

**1.2.56** "Pro Rata" means, with respect to any Allowed Claim, the ratio of the amount of such Allowed Claim (in Cash) to the aggregate (in Cash) amount of all Allowed Claims in the applicable Class.

**1.2.57** "Professional" means an Entity (a) employed under a Bankruptcy Court order in accordance with § 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date under § 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court under § 503(b)(4) of the Bankruptcy Code.

**1.2.58** "Professional Claim" means a § 503(b)(2) or (b)(4) administrative expense Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional in representing the Debtor in the Chapter 11 Case from the Petition Date to and including the Confirmation Date.

**1.2.59** "Proof of Claim" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

**1.2.60** "Rejection Date" means the date on which the Debtor's rejection of an Executory Contract takes place, in accordance with Plan Article 5.3.

**1.2.61** "Released Parties" means each of the following in its capacity as such: (a) the Debtor, its Estate, and the Reorganized Debtor, and (b) with respect to each Entity named in (a), such Entity's successors and assigns, and current and former members, officers, employees, agents, parents, subsidiaries, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other Professionals or representatives when acting in any such capacities, except any such Person against which any Debtor or Reorganized Debtor has a Retained Cause of Action.

**1.2.62** "Releasing Parties" means each of the following in its capacity as such: (a) the Debtor, its Estate, and the Reorganized Debtor, (b) each Holder that was provided a Ballot and (i) affirmatively votes to accept the Plan or (ii) either (A) abstains from voting or (B) votes to reject the Plan, and, in case of either (A) or (B), does not opt out of the Voluntary Release by Holders of Claims in compliance with the instructions set forth in the Solicitation Materials, and (c) with respect to each Entity addressed in (a) and (b), such Entity's current subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, equity holders, partners, and other professionals, in each case solely in their capacity as such.

**1.2.63** "Reorganized Debtor" means the Debtor as reorganized under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on and after the Confirmation Date.

**1.2.64** "Retained Causes of Action" means the claims and Causes of Action specified and otherwise described in the Plan Supplement.

**1.2.65** "Schedules" means the schedules of assets and liabilities, schedules of Executory Contracts, and statements of financial affairs filed by the Debtor in the Chapter 11 Case as may be amended from time to time, which are incorporated herein by reference as

if copied in full. Copies of the Schedules can be found at the bankruptcy clerk's office or online at www.pacer.gov.

**1.2.66** "Secured" means secured by a Lien on property in which an Estate has an interest, to the extent such Lien is valid, perfected, and enforceable under applicable law or by reason of a Bankruptcy Court order (or that is subject to setoff under § 553 of the Bankruptcy Code) to the extent of the value of its Holder's interest in the applicable Debtor's Estate's interest in such property (or to the extent of the amount subject to setoff), as determined in accordance with § 506(a) of the Bankruptcy Code.

**1.2.67** "Solicitation Materials" means the solicitation package, including Ballots, authorized under the Solicitation Procedures Order.

**1.2.68** "Solicitation Procedures Order" means the *Order (1) Scheduling a Hearing to Consider Confirmation of the Debtor's Plan of Reorganization; (2) Establishing Voting and Objection Deadlines; and (3) Approving Balloting, Solicitation, Notice, and Voting Procedures* [Docket No. TBD], as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

**1.2.69** "Specified Contract" means any Executory Contract identified in Schedule A of the Plan Supplement, as may be amended, as a contract to be rejected under the Plan.

**1.2.70** "Subordinated Claim" means any Claim subordinated under § 510(c) of the Bankruptcy Code.

**1.2.71** "Subsequent Distribution Date" means a date after the Initial Distribution Date selected by the Reorganized Debtor for Distributions in accordance with Plan Article 6.

**1.2.72** "Supplemental Distribution Date" means a date after the Initial Distribution Date and in addition to the periodic Subsequent Distribution Dates, selected by the Reorganized Debtor in its discretion in accordance with Article 6, on which Distributions may occur.

**1.2.73** " "Unclaimed Distribution" means any Distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted that Distribution or, in the case of a Distribution made by check, negotiated such check; (b) given written notice to the Debtor of an intent to accept that Distribution; (c) responded in writing to the request of the Reorganized Debtor for information necessary to facilitate that Distribution; or (d) taken any other action necessary to facilitate such Distribution.

**1.2.74** "Undeliverable Distribution" means any Distribution under the Plan on account of an Allowed Claim that has been returned as undeliverable or for which no address for such Holder is found in the Debtor's records or after a reasonable search for such address.

**1.2.75** "Unexpired Lease" means any lease to which the Debtor is a party that is subject to assumption or rejection under § 365 or 1123 of the Bankruptcy Code.

**1.2.76** "Unimpaired" means any Claim or Equity Interest that is not Impaired.

**1.2.77** "Unsecured Claim" means any Claim that is not an Administrative Claim, or a Priority Tax Claim.

**1.2.78**   "U.S. Trustee" means the United States Trustee for Region 6.

**1.2.79**   "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.2.80**   "Voluntary Release" means the release by Holders set forth in Plan Article 9.5.

**1.2.81**   "Voting" means the process by which a Holder may vote to accept or reject the Plan, in accordance with the Disclosure Statement and the conditions in Plan Article 3.

**1.2.82**   "Voting Deadline" means 5:00 p.m. (prevailing Central Time) on [TBD], by which time all Ballots must be actually received by Debtor Counsel in accordance with the instructions provided on the Ballot.

**1.2.83**   "Voting Record Date" means [TBD].

**1.2.84**   "ZOLL/ACSI Unsecured Judgment Claim" means the unsecured claim filed by ACSI on account of the Arbitration Award in the amount of $5,453,007.66.

**1.3**   **Rules of Interpretation**

For the purposes of this Plan and unless otherwise specified in this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, agreement, lease, plan, policy, document, or instrument being in a particular form or on particular terms and conditions means that the same will be substantially in that form or substantially on those terms and conditions; (c) any reference herein to a contract, agreement, lease, plan, policy, document or instrument or schedule or exhibit thereto, whether or not filed, mean the same as amended, restated, modified, or supplemented from time to time in accordance with the terms hereof or thereof; (d) all references herein to an "Article" is a reference to an Article hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan; (f) captions and headings to Articles are inserted for the convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in § 102 of the Bankruptcy Code will apply; (h) all references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (i) all references to statutes, regulations, orders, rules of courts, and the like mean as amended from time to time, and as applicable to the Chapter 11 Case; (j) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order; (k) all references herein to exhibits are references to exhibits in the Plan Supplement; (l) any reference to an Entity as a holder of a Claim or Equity Interest includes that Entity's successors and permitted assigns; (m) where this Plan contemplates that the Debtor or Reorganized Debtor will take any action, incur any obligation, issue any security or adopt, assume, execute, or deliver any contract, agreement, lease, plan, policy, document, or instrument on or before the Effective Date, the same will be duly and validly authorized by the Plan and effective against and binding upon such Debtor or Reorganized Debtor, as applicable, on and after

the Effective Date without further notice to, order of, or other approval by the Bankruptcy Court and without further action under applicable law, regulation, order, or rule; (n) anything required to be done by the Debtor or the Reorganized Debtor on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter; and (o) any reference herein to the word "including" or word of similar import means "including without limitation."

## 1.4    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, will govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan.

## 1.5    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed herein.

## 1.6    Reference to the Debtor or the Reorganized Debtor

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor means the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires. Where the term Debtor is used referring to an event or action taking place after the Confirmation Date, such term should be read as referring to the Reorganized Debtor.

## II.    General Administrative Claims, Priority Tax Claims, Professional Claims, and United States Trustee Statutory Fees

In accordance with § 1123(a)(1) of the Bankruptcy Code, the Plan does not classify General Administrative Claims, Priority Tax Claims, and Professional Claims, payment of which is provided for below.

## 2.1    Administrative Claims Bar Date

Any request for payment of an Administrative Claim must be filed and served on the Reorganized Debtor on or before the Administrative Claims Bar Date and in accordance with the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order; provided that no request for payment is required to be filed and served with respect to any:

        (a)    Administrative Claim that is Allowed as of the Administrative Claims Bar Date;

        (b)    Ordinary Course General Administrative Claim;

(c)    Claim of a Governmental Unit not required to be filed under § 503(b)(1)(D) of the Bankruptcy Code;

(d)    Professional Claim; or

(e)    Claim for U.S. Trustee Fees.

Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim on or before the Administrative Claims Bar Date and in accordance with the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order will be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, or their respective property, and such Administrative Claim will be deemed discharged as of the Reorganized Debtor's Effective Date.

Any objection to a request for payment of an Administrative Claim that is required to be filed and served under this Article 2.1 must be filed and served on the Debtor or Reorganized Debtor, as applicable, and the Holder of the Administrative Claim (a) no later than the Claims Objection Bar Date or (b) by such later date as may be established by order of the Bankruptcy Court upon a motion by a Reorganized Debtor, with notice only to those parties entitled to receive notice in accordance with Plan Article 12.14.

## 2.2    General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim will receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Administrative Claim, Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on the later of (a) the Effective Date or as soon as reasonably practicable thereafter if such Administrative Claim is Allowed as of such Effective Date, or (b) the date on which such Claim is Allowed or as soon as reasonably practicable thereafter; except that, with respect to Ordinary Course General Administrative Claims, such Holder will receive the full unpaid amount of such Claim on the date such amount is due in accordance with applicable non-bankruptcy law and the terms and conditions of any applicable agreement or instrument.

## 2.3    Professional Claims

### 2.3.1    Post-Confirmation-Date Fees and Expenses

From and after the Confirmation Date, the Reorganized Debtor will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by the Reorganized Debtor. Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with §§ 327, 328, 329, 330, or 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor may employ and pay any Professional in the

ordinary course of business, including the draw of any retainers held by a Professional without seeking relief from the Bankruptcy Court.

### 2.3.2    Final Fee Applications

All final requests for payment of Professional Claims must be filed and served no later than 60 days after the Confirmation Date. The Bankruptcy Court will determine the Allowed amounts of such Professional Claims.

### 2.3.3    Payment of Professional Fees

The Reorganized Debtor will pay in full Professional Claims in Cash as soon as reasonably practicable after such Claims are Allowed by order of the Bankruptcy Court. To the extent that the Reorganized Debtor's Cash on hand is insufficient to satisfy the amount of such Professional Claims, the Reorganized Debtor will pay such Professional Claims as soon as sufficient Cash becomes available to the Reorganized Debtor.

## 2.4    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, the Holder of each Allowed Priority Tax Claim due and payable on or before the applicable Effective Date will receive, in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, Cash on the Effective Date or as soon as reasonably practicable thereafter in an amount equal to the full unpaid amount of such Allowed Priority Tax Claim.

Any Allowed Priority Tax Claim that is not due and payable on or before the Confirmation Date will be paid in the ordinary course of business after the Confirmation Date as and when due under applicable non-bankruptcy law.

## 2.5    Statutory Fees Payable Under 28 U.S.C. § 1930

The Debtor or Reorganized Debtor, as applicable, will pay its U.S. Trustee Fees for each quarter (including any fraction thereof) until its Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

# III.    Classification, Treatment, and Voting of Claims and Equity Interests

## 3.1    Classification of Claims and Equity Interests

All Claims and Equity Interests, except for Administrative Claims, Priority Tax Claims, and Professional Claims, are classified in the Classes set forth in this Article 3 in accordance with § 1122 of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Equity Interest is an

Allowed Claim or Equity Interest in that Class and has not been paid, released, disallowed, or otherwise satisfied before the applicable Effective Date.

**3.2      Summaries of Classification and Treatment**

The classification of Claims and Equity Interests under the Plan with respect to each Debtor is as follows:

| Class(es) | Claims and Equity Interests | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | ZOLL/ACSI Unsecured Judgment Claim | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired | Entitled to Vote |

**3.3      Treatment of Claims and Equity Interests**

The following sections provide the proposed treatment for each Class.

**3.3.1   Class 1—Other Priority Claims**

(a)      *Classification*: Class 1 contains the Allowed Other Priority Claims against the Debtor.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, the Holder of an Allowed Other Priority Claim will receive, on the Initial Distribution Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Claim, the following:

(i)      Payment in full in Cash of its Allowed Class 1 Claim

(c)      *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Claims in Class 1 are deemed to have accepted the Plan.

**3.3.2   Class 2—ZOLL/ACSI Unsecured Judgment Claim**

(a)      *Classification*: Class 2 contains the Allowed ZOLL/ACSI Unsecured Judgment Claim against the Debtor.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed ZOLL/ACSI Unsecured Judgment Claim agrees to a less favorable treatment, the Holder of an Allowed ZOLL/ACSI Unsecured Judgment Claim will receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed

ZOLL/ACSI Unsecured Judgment Claim, in accordance with the following terms:

(i)     Payment in Cash in the amount of $100,000.00 on the Initial Distribution Date;

(ii)    Payment in Cash of 1/13th of the remainder of the Allowed amount of the Claim on each Subsequent Distribution Date until paid in full; *provided, however,* that if in accordance with Plan Article 6 the Reorganized Debtor identifies additional dates after the Initial Distribution Date to be Supplemental Distribution Dates for purposes of making additional Distributions, any payments made on such Supplemental Distribution Date will reduce the amount that would have been due on the next Subsequent Distribution Date by the amount of the payment made on the Supplemental Distribution Date. If the amount of the payment made on the Supplemental Distribution Date exceeds the amount that would have been due on the next Subsequent Distribution Date, the excess will reduce the amount that would have been due on the following Subsequent Distribution Date, and so forth.

(c)     *Voting*: Class 2 is Impaired under the Plan. The Holder of an Allowed Claim in Class 2 is entitled to vote to accept or reject the Plan.

### 3.3.3   Class 3—General Unsecured Claims

(a)     *Classification*: Class 3 contains the Allowed General Unsecured Claims against the Debtor.

(b)     *Treatment*: Except to the extent that the Holder of a Class 3 Allowed General Unsecured Claim agrees in writing to less favorable treatment, the Holder of a Class 3 Claim will be paid its Class 3 Claim according to the following terms:

(i)     Payment in Cash of the Holder's Pro Rata share of $50,000 on the Initial Distribution Date

(ii)    Payment in Cash of 1/4th of the remainder of the Allowed amount of the Claim on each Subsequent Distribution Date until paid in full; *provided, however,* that if in accordance with Plan Article 6 the Reorganized Debtor identifies additional dates after the Initial Distribution Date to be Supplemental Distribution Dates for purposes of making additional Distributions, any payments made on such Supplemental Distribution Date will reduce the amount that would have been

due on the next Subsequent Distribution Date by the amount of the payment made on the Supplemental Distribution Date. If the amount of the payment made on the Supplemental Distribution Date exceeds the amount that would have been due on the next Subsequent Distribution Date, the excess will reduce the amount that would have been due on the following Subsequent Distribution Date, and so forth.

(c)    *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 3.3.4    Class 4—Equity Interests

(a)    *Classification*: Class 4 contains the Equity Interests in the Debtor.

(b)    *Treatment*: On the Confirmation Date, Equity Interests in the Debtor will be deemed canceled and replaced with Equity Interests in the Reorganized Debtor in accordance with the following:

(i)    No distributions to Holders of Equity Interests will be permitted until Holders of Claims in Classes 1 through 3 have been paid in full or otherwise paid under the terms of the Plan.

(c)    *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

### 3.4    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing will be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class in accordance with § 1129(a)(8) of the Bankruptcy Code.

### 3.5    Voting Rights and Acceptance Requirements

Each Holder of an Allowed Claim as of the Voting Deadline in an Impaired Class of Claims or Interests that is not deemed to have rejected the Plan and that held such Claim or Interest as of the Voting Record Date will be entitled to vote separately to accept or reject the Plan as provided in the Solicitation Procedures Order.

An Impaired Class of Claims will have accepted the Plan if votes in favor of the Plan have been cast by at least two-thirds in amount and more than one-half in number of the Allowed Claims in such Class that voted on the Plan in accordance with the procedures set forth in the Solicitation Procedures Order. If a Class contains Claims eligible to vote and no Holder eligible to vote in such Class votes to accept or reject the Plan, such Holders and such Class will be deemed to have accepted the Plan.

**3.6**     **Confirmation Under §§ 1129(a) and 1129(b) of the Bankruptcy Code.**

Section 1129(a)(10) of the Bankruptcy Code will be satisfied for the purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims; *provided, however,* that if no Holder of a Claim with respect to a specific voting Class for a Debtor timely submits a Ballot indicating acceptance or rejection of the Plan and one or more Holder of an Allowed Claim or a temporarily Allowed Claim exists in such Class, such Class (with respect to such Debtor) will be deemed to have accepted the Plan. The Debtor will seek Confirmation of the Plan in accordance with § 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.

**3.7**     **Special Provision Governing Unimpaired Claims**

Except as otherwise provided herein, the Plan will not affect the Debtor's or the Reorganized Debtor's rights with respect to any Unimpaired Claims, including legal and equitable defenses or setoff or recoupment rights with respect thereto.

**3.8**     **Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto. The Debtor is not currently aware of any asserted Subordinated Claims outside of those classified in the Classes described herein. But the Debtor and Reorganized Debtor reserve the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim.

# IV.     Implementation of the Plan

**4.1**     **Reorganized Debtor**

Except as otherwise provided herein or in the Confirmation Order, the Debtor will, as a Reorganized Debtor, continue to exist after the Confirmation Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable law. During the period from the Confirmation Date through and until its Effective Date, the Reorganized Debtor will operate its business.

**4.2**     **Vesting of Assets in the Reorganized Debtor**

On the Confirmation Date, all property of the Debtor's Estate and any property acquired by the Debtor under the Plan, will vest in the Reorganized Debtor. In accordance with the provisions of Plan Article 9, such property will be deemed free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests, and other interests, except for Liens and obligations expressly established or preserved under the Plan.

The Reorganized Debtor, on and after the Confirmation Date, may operate its business and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement.

**4.3     Cancellation of Notes, Instruments, and Other Documents**

On the Confirmation Date, except to the extent otherwise provided in the Plan, all notes, instruments, or other documents evidencing Claims, will be cancelled, and the obligations of the Debtors or the Reorganized Debtor thereunder or in any way related thereto will be discharged and deemed satisfied in full in accordance with § 1141 of the Bankruptcy Code; *provided, however,* that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Equity Interest will continue in effect solely for purposes of (a) allowing Holders of Allowed Claims to receive Distributions under the Plan; (b) allowing and preserving the rights of the Reorganized Debtor to make Distributions on account of Allowed Claims as provided in the Plan; and (c) permitting the Reorganized Debtors to enforce any obligation (if any) owed to the Reorganized Debtors under the Plan; *provided, further, however,* that (a) the preceding proviso will not affect the discharge of Claims or Interests under the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtor or Reorganized Debtor, as applicable, except as expressly provided for in the Plan and (b) except as otherwise provided in the Plan, the terms and provisions of the Plan will modify any existing contract or agreement that would in any way be inconsistent with Distributions under the Plan.

**4.4     Section 1146 Exemption from Certain Transfer Taxes and Recording Fees**

To the fullest extent permitted by law, under § 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other Entity, under, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor; (b) the creation, modification, consolidation, assumption, termination, refinancing or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents will, and will

be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or government assessment. The Bankruptcy Court will retain specific jurisdiction with respect to these matters.

**4.5    Preservation of Causes of Action**

Except as otherwise expressly provided in the Plan or Confirmation Order, each and every Cause of Action, right of setoff and other legal and equitable defenses of the Debtor or any Estate are preserved for the benefit of the Reorganized Debtors and, along with the exclusive right to enforce such Cause of Action and rights, will vest exclusively in the Reorganized Debtor as of the Confirmation Date; provided that nothing in this Article 4.5 will limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim before the applicable Claim Objection Bar Date unless otherwise ordered by the Bankruptcy Court. Unless a Cause of Action is expressly waived, relinquished, released, or compromised in the Plan or an order of the Bankruptcy Court, the Reorganized Debtor expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), laches, or other preclusion doctrine will apply to such Cause of Action as a consequence of the Confirmation, the Plan, the vesting of such Cause of Action in the Reorganized Debtor, any order of the Bankruptcy Court or this Chapter 11 Case. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue such Cause of Action against them. The Debtor or Reorganized Debtor, as applicable, instead expressly reserves all rights to prosecute any and all Causes of Action against any Entity, in accordance with the Plan. Without limiting any the foregoing, the Reorganized Debtor will retain the Retained Causes of Action described in the Plan Supplement.

**4.6    Effectuating Documents and Further Transactions**

The Reorganized Debtor may take all actions to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, without the need for any approvals, authorizations, actions, or consents except for those expressly required by the Plan. James Evans, as President and Manager of the Debtor and Reorganized Debtor, will be authorized to certify or attest to any of the foregoing actions.

With respect to the Debtor or Reorganized Debtor, as applicable, before, on, or after the Confirmation Date, all matters provided for under the Plan that would otherwise require approval of the members or managers of the Debtor or Reorganized Debtor will be deemed to have been so approved and will be in effect before, on, or after the Confirmation Date, in accordance with applicable law, and without any requirement of further action by the members or managers of the Debtor or Reorganized Debtor, or the need for any approvals, authorizations, actions, or consents.

4.7     **Debtor Management and Employment-Related Agreements**

Except as otherwise provided herein, as of the Confirmation Date, the Reorganized Debtor will have authority to: (i) maintain, reinstate, amend, or revise existing employment and related agreements with its employees, subject to the terms and conditions of any such agreement and applicable non-bankruptcy law; and (ii) enter into new employment and related agreements for employees. From and after the Confirmation Date, the Reorganized Debtor will continue to administer its workers' compensation programs, where applicable, in accordance with its prepetition practices and procedures for as long as such Reorganized Debtor continues to operate the applicable business.

## V.     Treatment of Executory Contracts

5.1     **Assumption of Executory Contracts**

Except as otherwise provided herein, all Executory Contracts of the Debtor will be assumed on the Confirmation Date in accordance with §§ 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts previously rejected under an order of the Bankruptcy Court, (b) Executory Contracts that are the subject of a motion to reject that is pending on the Rejection Date, and (c) the Specified Contracts that the Debtor elects to reject under the Plan, which may be amended at any time under Article 5.3 below. Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of the assumption of such Executory Contracts in accordance with §§ 365 and 1123 of the Bankruptcy Code.

5.2     **Claims Against the Debtor Upon Rejection**

No Executory Contract rejected by a Debtor on or before the applicable Effective Date will create any obligation or liability of the Debtor or the Reorganized Debtor that is not a Claim. Any Claim arising from or relating to the rejection of an Executory Contract must be filed with the Bankruptcy Court no later than 30 days after the Confirmation Date. Any Claim arising from or relating to the rejection of an Executory Contract that is not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and will not be enforceable against the Debtor, the Reorganized Debtor, or any of their property. The Reorganized Debtor will have 30 days from the filing of any Proof of Claim filed in accordance with this paragraph in which to object to such Claim. Any Allowed Claim arising from the rejection of an Executory Contract will be classified as an Unsecured Claim and will be treated as such in accordance with Article 3.

5.3     **Cure and Assumption of Executory Contracts**

Any counterparty to an Executory Contract that fails to object timely to the proposed assumption of such Executory Contract or the related cure amount provided in the Plan Supplement will be deemed to have consented to the assumption and cure on the terms provided in the Plan Supplement or applicable notice. Entry of the Confirmation Order by the Bankruptcy Court will constitute (a) approval of assumption and (b) with respect to Executory Contracts to be assumed as of the Confirmation Date that are not the subject of a timely filed objection to assumption or the proposed cure amount, approval of the amount

required to cure a default (if any) under such Executory Contract or a determination of the cure amount, as applicable, in accordance with §§ 365 and 1123 of the Bankruptcy Code. Except to the extent that such contract counterparty agrees to less favorable terms, any payment required to cure a default under an Executory Contract will be paid in Cash on the Effective Date.

### 5.4    Effect of Assumption

Assumption of any Executory Contract, under the Plan or otherwise, will result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, and the deemed waiver of any termination right or remedial provision arising under any such Executory Contract at any time before the date of its assumption, or as a result of such assumption, the transactions contemplated by the Plan or any changes in control or ownership of the Debtor during the Chapter 11 Case or as a result of the implementation of the Plan.

Any Proofs of Claim filed with respect to an Executory Contract that has been assumed will be deemed disallowed and expunged without further notice to, or action, order or approval of, the Bankruptcy Court, except where the Debtor or Reorganized Debtor and the counterparty to an Executory Contract have separately agreed to a waiver or reduction of obligations that would otherwise constitute cure obligations, subject to the counterparties' explicit retention of their rights to assert any such amounts as Unsecured Claims.

### 5.5    Assumption or Rejection of Disputed Contracts

Except as otherwise provided by order of the Bankruptcy Court, if the counterparty to an Executory Contract timely objects to any of the terms or conditions for the assumption, assignment, or cure of an Executory Contract and there remains a dispute as of the Confirmation Date regarding any such terms or conditions, the Reorganized Debtor will have 30 days from the Confirmation Date to file a motion with the Court seeking resolution of such dispute. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor will have 15 days from the entry of a Final Order resolving such dispute to determine whether to (a) proceed with assumption (or assumption and assignment, as applicable) of the Executory Contract in a manner consistent with such Final Order or (b) reject the Executory Contract. If the Reorganized Debtor elects to reject the applicable Executory Contract, the Reorganized Debtor will send written notice of rejection to the applicable counterparty within such 15-day period. Rejection of such Executory Contract will be deemed effective as of the date such written notice is sent.

### 5.6    Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract that is assumed or rejected will include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract, and all Executory Contracts related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the

foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to Prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases will not be deemed to alter the Prepetition nature of such Executory Contract or the validity, priority, or amount of any Claims that may arise in connection therewith.

**5.7    Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract as a Specified Contract, nor anything contained in the Plan, will constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract, or that any Reorganized Debtor has any liability thereunder.

**5.8    Contracts and Leases Entered into After the Petition Date**

The Reorganized Debtor will perform its obligations under each contract and lease entered into by such Debtor or Reorganized Debtor after the Petition Date, including any Executory Contract assumed by the Reorganized Debtor, in each case, in accordance with and subject to the then-applicable terms. Accordingly, such contracts and leases (including any assumed Executory Contracts) will survive and remain unaffected by entry of the Confirmation Order and all of the Debtor's or Reorganized Debtor's rights, claims, defenses, and privileges under such contracts and leases are expressly reserved.

# VI.    Provisions Governing Distributions

**6.1    Initial Distributions**

The Debtor will make Distributions on its Initial Distribution Date, under and subject to the terms of the Plan on account of each Claim that is Allowed on or before its Effective Date.

**6.2    Subsequent Distributions**

### 6.2.1    Subsequent Distribution Dates

The first Subsequent Distribution Date will occur on the last day of the fourth month following the Initial Distribution Date. Each Subsequent Distribution Date thereafter will occur on the last day of the third month following the previous Subsequent Distribution Date until the Final Distribution Date, which will occur no later than the last day of the 42nd month following the month in which the Initial Distribution Date occurs. Each Subsequent Distribution Date will be a Business Day. To the extent a Subsequent Distribution Date falls on a date which is not a Business Day, the Subsequent Distribution Date will occur on the first Business Day following such date.

### 6.2.2    Supplemental Distribution Date

The Reorganized Debtor will have the discretion to identify additional dates after the Initial Distribution Date to be Supplemental Distribution Dates for purposes of making

additional Distributions under the Plan in accordance with the Class treatment described in Plan Article 3, should such additional distribution dates become warranted or beneficial to the Reorganized Debtor.

### 6.2.3   Distributions on Disputed Claims

The Reorganized Debtor will make Distributions with respect to a Claim that becomes an Allowed Claim after its Effective Date on the first Subsequent Distribution Date after such Claim is Allowed. Unless the applicable Reorganized Debtor otherwise agrees, no partial Distributions will be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by Final Order of the Bankruptcy Court.

### 6.3   Record Date and Delivery of Distributions

### 6.3.1   Record Date for Claim Holders

On the Administrative Claims Bar Date, the Debtor's Claims Register will be deemed closed and the Debtor will be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Debtor's Administrative Claims Bar Date, except for any Claim relating to the post-Confirmation rejection of an Executory Contract filed after the Administrative Claims Bar Date in accordance with Article 5, for which the Holder will be recognized at the time such Claim is Allowed. If a Claim is transferred before Distribution on such Claim, the Reorganized Debtor will make Distributions to the transferee only to the extent practical, and only if the Reorganized Debtor receives written notice of the transfer in advance of the Effective Date, including sufficient information about the transferee to facilitate Distribution to the new Holder of the Claim, and if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

### 6.3.2   Delivery of Distributions in General

Except as otherwise provided herein, the Reorganized Debtor will make all Distributions required under the Plan to Holders of Allowed Claims. Except as otherwise provided herein, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims will be made to Holders of record as of the Administrative Claims Bar Date by the Reorganized Debtor as appropriate: (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is filed or if the Debtor or Reorganized Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of change of address delivered to the Debtor or the Reorganized Debtor; (c) to the transferee of a transferred Claim at the information provided in a written notice of Claim transfer; or (d) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor or the Reorganized Debtor has not received a written notice of a change of address or otherwise been made aware of a forwarding or otherwise updated address. The Debtor and the Reorganized Debtor will not incur any

liability on account of the delivery of any Distributions made in accordance with the Plan, including with respect to any Distributions that are unclaimed or returned.

## 6.4   De Minimis Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtor will not be required to make Distributions or payments of less than $25.00.

## 6.5   Undeliverable Distributions

No further attempt (or initial attempt for no-address Undeliverable Distributions) to distribute an Undeliverable Distribution will be made unless and until the Reorganized Debtor is notified in writing of the then-current address of such Holder, at which time such Distribution will be made to such Holder on the next Distribution Date following actual receipt of such notification.

Undeliverable Distributions will remain in the possession of the Reorganized Debtor until such Distribution becomes deliverable or such Distribution reverts to the Reorganized Debtor for further Distribution to the Holders of Allowed Unsecured Claims or is cancelled under Article 6.6 herein. Such Distribution will not be supplemented with any interest, dividends, or other accruals of any kind.

## 6.6   Reversion

Any Distribution under the Plan that is an Unclaimed Distribution or an Undeliverable Distribution for a period of six months thereafter will be deemed unclaimed property under § 347(b) of the Bankruptcy Code, and such Unclaimed Distribution or Undeliverable Distribution will revest in the Reorganized Debtor. Upon such revesting, the Claim of any Holder or its successors and assigns with respect to such property will be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

Nothing contained herein will require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim whose Distribution is declared an Unclaimed Distribution or Undeliverable Distribution.

## 6.7   Compliance with Tax Requirements and Allocations to Principal and Interest

In connection with the Plan, to the extent applicable, the Reorganized Debtor will comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions made in accordance with the Plan will be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor will be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. For purposes of the Plan, any withheld amount (or property) will be treated as if paid to the applicable claimant. The Reorganized Debtor reserves the right to allocate all Distributions made under the Plan in compliance with all applicable

wage garnishments, alimony, child support and other spousal awards, Liens, and encumbrances.

Distributions in full or partial satisfaction of Allowed Claims will be allocated first to trust fund-type taxes, if any, then to other taxes, and then to the remaining principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

## 6.8    Setoffs

Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtor or Reorganized Debtor, the Reorganized Debtor, in accordance with the Bankruptcy Code (including § 553 thereof), applicable non-bankruptcy law, or such terms as may be agreed to by the Holder and the Debtor or the Reorganized Debtor, as applicable, may, without any further notice to, or action, order, or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the applicable Effective Date (whether in accordance with the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim under the Plan will constitute a waiver or release by the Debtor or Reorganized Debtor of any such Claims, rights, and Causes of Action that such Debtor or Reorganized Debtor may possess against such Holder. In no event will any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless such Holder has filed a Proof of Claim in the Chapter 11 Case by the Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered authorizing and approving such setoff.

## 6.9    No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, Postpetition interest will not accrue or be paid on any Claim, and no Holder of a Claim against the Debtor will be entitled to interest accruing on or after the Petition Date on any Claim. Interest will not accrue or be paid on any Disputed Claim with respect to the period from the applicable Effective Date to the date an initial or final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## 6.10    No Payment Over the Full Amount

In no event will a Holder of a Claim receive more than the full payment of such Claim in Cash. To the extent any Holder has received payment in full in Cash with respect to a Claim, such excess Claim will be disallowed and expunged without an objection to such Claim having been filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 6.11    Claims Paid or Payable by Third Parties

#### 6.11.1   Claims Paid by Third Parties

If the Debtor becomes aware of the payment by a third party which causes the Holder of an Allowed Claim to receive more than payment in full in Cash, the Debtor or the Reorganized Debtor, as applicable, will send a notice of wrongful payment to the applicable Holder requesting return of any excess payments and advising the recipient of the provisions of the Plan requiring turnover of excess funds. The failure of such Holder to timely repay or return such Distribution will result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period until the amount is repaid.

# VII.    Procedures for Resolving Contingent, Unliquidated, and Disputed Claims

### 7.1    Objections to Claims

Any objections to Claims will be filed on or before the applicable Claims Objection Bar Date.

### 7.2    Estimation of Claims

With respect to the Debtor or Reorganized Debtor, as applicable, before or after the Effective Date the Debtor or the Reorganized Debtor, as applicable, may (but is not required to) request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated in accordance with § 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not yet been the subject of a Final Order, will be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute a maximum limitation on such Claim for all purposes under the Plan (including, but not limited to, for purposes of Distributions).

Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court or under the Plan.

Notwithstanding § 502(j) of the Bankruptcy Code, in no event will any Holder of a Claim that has been estimated under § 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation of such Claim unless the Holder of such Claim has filed a motion with the Bankruptcy Court requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

### 7.3 Expungement and Disallowance of Claims

#### 7.3.1 Paid, Satisfied, Amended, Duplicate, or Superseded Claims

Any Claim that has been paid, satisfied, amended, duplicated, or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor on or after 14 calendar days after the date on which notice of such adjustment or expungement has been filed with the Bankruptcy Court, without an objection to such Claim having to be filed, and without any further action, order or approval of the Bankruptcy Court.

#### 7.3.2 Claims by Persons From Which Property Is Recoverable

Unless otherwise agreed to by the Reorganized Debtor or ordered by the Bankruptcy Court, any Claims held by any Entity from which property is recoverable under § 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under § 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, will be deemed disallowed under § 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Entity has been resolved.

#### 7.3.3 Untimely Claims

Any Claim that was required to be filed by the applicable Claims Bar Date, but was not timely filed, will not be Allowed, will be deemed disallowed, and such claimant will be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Reorganized Debtor, or their respective property, and such Claim will be deemed discharged as of the Effective Date, unless otherwise ordered by a Final Order of the Bankruptcy Court.

### 7.4 Amendments to Proofs of Claim

On or after the applicable Claims Bar Date, a Proof of Claim may not be amended, other than to (a) update or correct the name or address of the Holder of such Claim or (b) reflect Postpetition credits or otherwise reduce the amount of the Claim, without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, as applicable. Any amended Proof of Claim for which prior authorization is required in accordance with this Article 7.4 but which is filed without such prior authorization will be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

### 7.5 No Distributions Pending Allowance

If an objection to a Claim or a portion thereof is filed as set forth in this Article 7 or the Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan will be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

**7.6**    **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) will be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan.

**7.7**    **Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Confirmation Date, the Reorganized Debtor will have the sole authority, with respect to Claims against such Reorganized Debtor, to (a) file, withdraw, or litigate to judgment objections to Claims, (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court, and (c) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court; provided that nothing in this Article 7.7 will limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim before the Claim Objection Bar Date unless otherwise ordered by the Bankruptcy Court.

## VIII.    Conditions Precedent to Effectiveness of the Plan

**8.1**    **Conditions Precedent to the Effective Date**

It will be a condition to the occurrence of the Effective Date that the following conditions will have been satisfied or waived with respect to such Debtor under the provisions of Article 8.2 hereof.

### 8.1.1    Confirmation Order

The Confirmation Order will have been entered.

### 8.1.2    No Stay of Confirmation

There will not be in force any order, decree, or ruling of any court or governmental body having jurisdiction, restraining, enjoining, or staying the consummation of, or rendering illegal the transactions contemplated by, this Plan.

### 8.1.3    Necessary Documents

All actions, documents, certificates and agreements necessary to implement the Plan will have been effected or executed and delivered, as applicable.

### 8.1.4    Necessary Authorizations

All authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan as of the Effective Date will have been received, waived, or otherwise resolved.

**8.2**    **Waiver of Conditions**

Any Reorganized Debtor may waive conditions to the occurrence of its Effective Date set forth in this Article 8 at any time; *provided, however,* that the conditions precedent set

forth in Articles 8.1.1 and 8.1.2 may not be waived, and the conditions set forth in Plan Articles 8.1.3 and 8.1.4 may only be waived with the approval of the Bankruptcy Court.

**8.3     Simultaneous Transactions**

Except as otherwise expressly set forth in the Plan, the Confirmation Order, or a written agreement by the Debtor or Reorganized Debtor, each action to be taken on the Effective Date will be deemed to occur simultaneously as part of a single transaction.

**8.4     Effect of Non-Occurrence of the Effective Date**

If the Plan is confirmed but the Effective Date does not occur within twelve months following the Confirmation Date, or such later date as is approved by the Bankruptcy Court, then (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto will be deemed null and void; and (c) nothing contained in the Plan will: (i) constitute a waiver or release of any claims by or Claims against, or any Equity Interests in, any Debtor, Reorganized Debtor, or any other Entity; (ii) prejudice in any manner the rights of the Debtor, Reorganized Debtor, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor, Reorganized Debtor, or any other Entity.

# IX.     Settlement, Release, Injunction, and Related Provisions

**9.1     Compromise and Settlement**

In accordance with § 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim.

The entry of the Confirmation Order will constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings will constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.

**9.2     Discharge of the Debtor**

**In accordance with § 1141(d) of the Bankruptcy Code and effective as of the Effective Date, and except as otherwise specifically provided in the Plan: (a) the distributions, rights, and treatment that are provided in the Plan will be in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on,**

obligations of, rights against and Equity Interests in, the Debtor, the Reorganized Debtor, or any of their assets, properties, or Estate, regardless of whether any property will have been distributed or retained under the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date; (b) the Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests will be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto will be extinguished completely, including all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt, right, or Equity Interest is filed or deemed filed under § 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed; or (iii) the Holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a Distribution under the Plan; and (d) all Entities will be precluded from ever asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, or their assets and properties any Claims and Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. The Confirmation Order will be a judicial determination of the discharge of all Claims and Equity Interests, subject to the Effective Date occurring.

### 9.3    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates will be fully released and discharged, and all of the rights, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to the Reorganized Debtor and its successors and assigns.

### 9.4    Release by the Debtors

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtor, the implementation of the restructuring contemplated by the Plan and the compromises contained herein, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtor, the Reorganized Debtor and the Estate, including any successor to the Debtor or any Estate representative from all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or

otherwise, including those that the Debtor, the Reorganized Debtor or the Estate would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim or Equity Interest or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the conduct of the business of the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or, in each case, related agreements, instruments, or other documents, any action or omission as an officer, member, agent, representative, fiduciary, controlling person, affiliate, or responsible party, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act.

**9.5    Voluntary Release by Holders of Claims**

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the restructuring contemplated by the Plan, and the compromises contained herein, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) will be deemed to conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws, or otherwise, including, those that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the conduct of the businesses of the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests before or during the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or, in each case, related agreements, instruments, or other documents, any action or omission as an officer, member, agent, representative, fiduciary, controlling person, affiliate, or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than

claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act.

Each Person providing releases under the Plan, including each of the Releasing Parties, will be deemed to have granted the releases set forth in those sections notwithstanding that such Entity may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that they may have under any statute or common law principle that would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

9.6    Exculpation

Notwithstanding anything herein to the contrary, the Exculpated Parties will neither have nor incur any liability to any Entity for any Bankruptcy-Related Action; provided that nothing in the foregoing will exculpate any Entity from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, or criminal conduct; provided that each Exculpated Party will be entitled to rely upon the advice of counsel concerning his, her, or its duties under or in connection with the Plan or any other related document, instrument, or agreement.

Notwithstanding anything herein to the contrary, as of the Confirmation Date, under § 1125(e) of the Bankruptcy Code the Exculpated Parties and their members, officers, employees, attorneys, financial advisors, and other professional advisors, representatives, and agents upon appropriate findings of the Bankruptcy Court will be deemed to have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan, and will not be liable to any Entity on account of such solicitation or participation.

In addition to the protections afforded in this Article 9.6 to the Exculpated Parties, and not in any way reducing or limiting the application of such protections, the Bankruptcy Court retains exclusive jurisdiction over any and all Causes of Action asserted against any Exculpated Party for any Bankruptcy-Related Action that are not otherwise exculpated or enjoined by this Plan.

9.7    Injunction

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN OR FOR OBLIGATIONS ISSUED PURSUANT HERETO, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED UNDER THE PLAN OR ARE SUBJECT TO EXCULPATION UNDER

PLAN ARTICLE 9.6 ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTOR, THE REORGANIZED DEBTOR, OR THE RELEASED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING, OF ANY KIND, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH RELEASED PARTIES ON ACCOUNT OF, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR THE PROPERTY OR ESTATES OF SUCH RELEASED PARTIES ON ACCOUNT OF, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATIONS DUE FROM THE DEBTOR OR THE REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, CAUSE OF ACTION OR EQUITY INTEREST; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS RELEASED, SETTLED, EXCULPATED, OR DISCHARGED UNDER THE PLAN OR CONFIRMATION ORDER.

**9.8**     **Limitations on Exculpations and Releases**

Notwithstanding anything contained in the Plan to the contrary, the releases and exculpation contained in the Plan do not release any obligations of any party arising under the Plan or any document, instrument, or agreement executed to implement the Plan.

**9.9**     **Temporary Injunction**

Upon Confirmation of the Plan, all Holders will be temporarily enjoined from proceeding against any officer, member, employee, or other responsible person of the Debtor or Reorganized Debtor individually, including James Evans (each a "Protected Party" for purposes of this temporary injunction), for the collection of all or any portion of their Allowed Claim. This temporary injunction will remain in effect as long as the Reorganized Debtor complies with the terms of the Plan. Specifically with regard to the Class 3 Zoll/ACSI Unsecured Judgment Claim for which the Plan provides that periodic payments are to be made, the temporary injunction provided in this Plan Article 9.9 enjoins and bars any Holder of such Claim from taking any of the following actions against any Protected Party: (1) commencing or continuing in any manner any action or proceeding of any kind on account of, in connection with, or with respect to such Claim; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Protected Party on account of, in connection with, or

with respect to such Claim; (3) creating, perfecting, or enforcing any encumbrance of any kind against any Protected Party on account of, in connection with, or with respect to such Claim; (4) asserting any right of setoff or subrogation of any kind against any obligations due from any Protected Party or against property or interests in property of any Protected Party on account of, in connection with, or with respect to such Claim; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to such Claim so long as payments to the Holder of such Claim have been made in accordance with Plan Articles 3 and 6 within the applicable Distribution Grace Period.

**9.10   Preservation of Insurance**

The Debtor's discharge, exculpation, and release, and the exculpation and release in favor of Released Parties, as provided herein will not diminish or impair the enforceability of any insurance policy that may provide coverage for Claims against the Debtor, the Reorganized Debtor, their current and former members and officers, or any other Person.

## X.   Modification, Revocation, or Withdrawal of the Plan

**10.1   Modification of Plan**

Subject to the limitations contained in the Plan: (a) in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Debtor reserves the right to amend or modify the Plan before the entry of the Confirmation Order, including amendments or modifications to satisfy § 1129(b) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**10.2   Effect of Confirmation on Modification**

Entry of the Confirmation Order will automatically effectuate approval of all modifications and amendments to the Plan following solicitation of the Plan under § 1127(a) of the Bankruptcy Code and no additional disclosure or re-solicitation under Bankruptcy Rule 3019 will be required.

**10.3   Revocation of Plan**

The Debtor reserves the right to revoke or withdraw the Plan before the entry of the Confirmation Order and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if the Confirmation Order is not entered, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed under the Plan will be deemed null and void; and (c) nothing contained in the Plan will: (i) constitute a waiver or release of any claims by or Claims against, or any Equity Interests in, any Debtor or any other Entity; (ii) prejudice in

any manner the rights of the Debtor or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor, Reorganized Debtor, or any other Entity.

# XI.    Retention of Jurisdiction

With respect to each Debtor, notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, the Chapter 11 Case or the Plan under §§ 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized under the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations in accordance with Article 5; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(d)    Ensure that Distributions to Holders of Allowed Claims are accomplished in accordance with the Plan;

(e)    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)    Adjudicate, decide, or resolve any and all matters related to Causes of Action pending before the Bankruptcy Court on the applicable Effective Date;

(g)    Adjudicate, decide, or resolve any Cause of Action whether or not such Cause of Action was pending as of the applicable Effective Date;

(h)      Adjudicate, decide, or resolve any matters related to § 1141 of the Bankruptcy Code;

(i)      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, Plan Supplement, or the Disclosure Statement;

(j)      Enter and enforce any order for the sale of property under § 363, 1123, or 1146(a) of the Bankruptcy Code;

(k)      Adjudicate, decide, or resolve any dispute as to the ownership of any Claim or Equity Interest;

(l)      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(m)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(n)      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the existence, nature, and scope of the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(o)      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(p)      Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

(q)      Enter an order or final decree concluding or closing the Chapter 11 Case;

(r)      Adjudicate any dispute arising from or relating to Distributions under the Plan;

(s)     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(t)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(u)     Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

(v)     Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred before or after the Effective Date;

(w)     Enforce all orders previously entered by the Bankruptcy Court; and

(x)     Hear any other matter not inconsistent with the Bankruptcy Code.

## XII.    Miscellaneous Provisions

### 12.1    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the Confirmation Date the terms of the Plan and the Plan Supplement will be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, or injunctions described in the Plan, each Entity acquiring property under the Plan, and any non-Debtor parties to Executory Contracts with the Debtor.

### 12.2    Additional Documents

On or before the Effective Date, the Debtor may file or otherwise provide to the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims or Equity Interests receiving Distributions under the Plan, and all other parties in interest will, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**12.3    Reservation of Rights**

Except as expressly set forth herein, the Plan will have no force or effect until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to the Plan will be or will be deemed to be an admission or waiver of any rights of: (a) the Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (b) any holder of a Claim or an Equity Interest or other Entity before the Confirmation Date.

**12.4    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to herein will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**12.5    Term of Injunction or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, with respect to the Debtor, all injunctions or stays in effect in the Chapter 11 Case under § 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) will remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order will remain in full force and effect in accordance with their terms.

**12.6    Entire Agreement**

On the Confirmation Date the Plan and the Plan Supplement will supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.7    Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

**12.8    Severability**

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the

foregoing is: (a) valid and enforceable; (b) integral to the Plan and may not be deleted or modified without the approval of the Bankruptcy Court; and (c) nonseverable and mutually dependent.

**12.9    Closing of Chapter 11 Cases**

The Reorganized Debtor, promptly after the full administration of its Chapter 11 Case, will file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close its Chapter 11 Case.

**12.10    Conflicts**

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement, or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan will govern and control.

**12.11    Further Assurances**

The Debtor, Reorganized Debtor, all Holders of Claims and Equity Interests, and all other parties-in-interest will, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**12.12    No Stay of Confirmation Order**

The Confirmation Order will contain a waiver of any stay of enforcement otherwise applicable, including under Bankruptcy Rules 3020(e) and 7062.

**12.13    Waiver or Estoppel**

Each Holder of a Claim or Equity Interest will be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court before the Confirmation Date.

**12.14    Post-Confirmation Date Service**

After the Confirmation Date, the Reorganized Debtor is authorized to limit the list of Entities receiving documents under Bankruptcy Rule 2002 to those Entities that have filed renewed requests for service.

**12.15    Notices**

To be effective, all notices, requests, pleadings, and demands to or upon the Debtor or Reorganized Debtor must be in writing and, unless otherwise expressly provided herein, will be deemed to have been duly given or made when actually delivered. Such documents must be addressed as follows:

AutoMedx, LLC
c/o James Evans
7700 Windrose Ave. #G300
Plano, TX 75204

With a copy to:

Judith W. Ross
Ross & Smith, PC
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201

*[Remainder of Page Intentionally Left Blank]*

Dated: April 29, 2019                          AutoMedx, LLC,

James Evans
President and Member Manager

Submitted to the Court by:              /s/ Eric Soderlund
                                        Judith W. Ross
                                        State Bar No. 21010670
                                        Eric Soderlund
                                        State Bar No. 24037525
                                        Rachael L. Smiley
                                        State Bar No. 24066158
                                        Jessica Lewis
                                        State Bar No. 24060956
                                        **Ross & Smith, PC**
                                        700 N. Pearl Street, Suite 1610
                                        Dallas, Texas 75201
                                        Telephone: 214-377-7879
                                        Facsimile: 214-377-9409
                                        Email: judith.ross@judithwross.com
                                               eric.soderlund@judithwross.com
                                               rachael.smiley@judithwross.com
                                               jessica.lewis@judithwross.com

                                        **COUNSEL FOR DEBTOR AND DEBTOR IN
                                        POSSESSION**